***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with the modification of Finding of Fact #9, Findings of Fact and Conclusions of Law and the Award concerning the extent of plaintiff's entitlement to benefits and defendants' entitlement to a credit as well as minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. That all parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between defendant-employer and plaintiff at all relevant times herein.
3. The Travelers was the workers' compensation carrier at all relevant times herein.
4. Plaintiff's average weekly wage is $397.32 per week, yielding a compensation rate of $264.88 per week.
5. The deposition and medical records of Drs. J. M. McWhorter and Sebastian J. Ciacchella are a part of the evidentiary record in this matter.
6. The issues to be determined are as follows:
 a) Whether plaintiff sustained an injury by accident on or about October 8, 1999, while in the course and scope of the employment with defendant-employer?
 b) If so, what, if any, benefits is she entitled to recover under the Act?
 c) Whether the medical treatment sought and received by plaintiff is necessary and related to the injury by accident?
 ***********
Based upon the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. On October 8, 1999, plaintiff was fifty-four years old and had worked for defendant-employer for three and one half years as a packer. Plaintiff's normal job duties involved packing pulls, drawer slides and hinges into bags and boxes, making boxes, and putting labels on boxes.
2. Defendant-employer required plaintiff and other employees to perform inventory on October 8, 1999. Inventory was done twice per year by defendant-employer.
3. While doing inventory, plaintiff was required to move, push and pull bulk boxes of bolts, pulls and drawer slides heavier than ten pounds. These duties were beyond the normal and customary duties plaintiff performed in her regular position of packer.
4. While performing inventory, plaintiff experienced discomfort in her left arm, back and scapula. Plaintiff completed her shift on October 8, 1999, and worked the next two days performing inventory, but her left shoulder, under arm, chest and back continued to hurt.
5. Plaintiff went to Urgent Care in Greensboro on October 10, 1999, where she was seen by Dr. D. Bouska. Plaintiff told Dr. Bouska that she thought she had strained her shoulder while doing inventory for defendant-employer. Dr. Bouska restricted plaintiff for seven days to no lifting over 20 pounds and no repetitive overhead lifting. Plaintiff notified her supervisor of these restrictions.
6. Plaintiff's symptoms continued to get worse while at work. On November 2, 1999, plaintiff requested to be allowed to get medical treatment under workers' compensation and was sent to Wesley Long Memorial Hospital's emergency room. Plaintiff was diagnosed with cervical radiculopathy on the left, instructed not to use her left arm at work and referred to occupational health.
7. On November 4, 1999, plaintiff was examined by Dr. Sebastian Ciacchella who diagnosed plaintiff's condition as left rotator cuff tendonitis and shoulder strain with possible cervical radiculopathy. Plaintiff was released to return to restricted duty with no lifting, pushing or pulling of greater than 10 pounds. Plaintiff was only restricted to right-handed work on November 3, 1999. Plaintiff was informed by Jennifer Davis that work was available within the restrictions given by Dr. Ciacchella; however, plaintiff felt that she could perform only right-handed work.
8. Dr. Ciacchella referred plaintiff to physical therapy. Plaintiff participated in physical therapy from November 12, 1999 through December 13, 1999. Plaintiff's physical therapy was discontinued when plaintiff's claim for workers' compensation benefits was denied by defendants. While Dr. Ciacchella related plaintiff's left shoulder pain to plaintiff's lifting heavy boxes at work for defendant-employer, he could not relate her shoulder pain to any cervical injury.
9. Plaintiff thereafter returned to her primary care doctor, Dr. Renato Zarate. Dr. Zarate referred plaintiff to neurosurgeon Dr. McWhorter. Dr. McWhorter diagnosed plaintiff's condition as cervical, left shoulder and left upper extremity pain secondary to cervical spondylosis. Dr. McWhorter treated plaintiff by placing her in physical therapy. Dr. McWhorter found plaintiff's cervical condition was aggravated by lifting heavy boxes while working with defendant-employer. Dr. McWhorter removed plaintiff from work from February 15, 2000 through May 5, 2000. Although Dr. McWhorter did not provide plaintiff with an additional out-of-work note, the greater weight of the evidence demonstrates that plaintiff was not capable of a full duty return to work as of May 6, 2000. Plaintiff returned to Dr. McWhorter's office on June 20, 2000 with continued complaints and additional testing was ordered. Dr. McWhorter discharged plaintiff from his care on September 8, 2000 when he found "no evidence of active cervical motor root abnormality affecting the left arm." Other findings were not related to plaintiff's injury at work.
10. Although plaintiff continued to complain of on-going problems after her September release and, consequently, Dr. Zarate referred her to Dr. Michael King and Dr. Harlan Daubert, plaintiff's complaints are unrelated to the injury she sustained while working for defendant-employer.
11. Plaintiff has not returned to work for defendant-employer or any other employer. Both light duty and full duty employment has been available for plaintiff.
12. Plaintiff received twelve weeks of short-term disability benefits for which she paid a premium. Thereafter, plaintiff received long-term disability benefits fully funded by defendant-employer, which were not due and payable when made.
13. Plaintiff has failed to establish that she was suffered any loss of wage earning capacity after September 8, 2000. As of this date, plaintiff was capable of returning to work in her regular job earning the same wages as at the time of her injury.
 ***********
Based on the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident while in the course and scope of her employment with defendant-employer on or about October 8, 1999. Plaintiff's injury by accident was caused by her deviation from her normal work routine while performing inventory duties for defendant defendant-employer. N.C.G.S. § 97-2(6).
2. Plaintiff suffered an aggravation of her cervical spondylosis on October 8, 1999, while taking inventory for defendant-employer. N.C.G.S. § 97-2(6).
3. Plaintiff is entitled to receive total disability benefits at the rate of $264.88 per week from November 3, 1999 until September 8, 2000 for the periods she was out of work as a result of the injury she sustained, subject to a reasonable attorney's fee and defendants' credit. N.C.G.S. § 97-29.
4. Subject to the limitations of N.C.G.S. § 97-25.1, plaintiff is entitled to reasonably necessary medical expenses related to her injury by accident for so long as they continue to effect a cure, give relief or lessen plaintiff's period of disability. N.C.G.S. § 97-25; N.C.G.S. § 97-25.
5. Defendants are entitled to a full credit for payments which were not due and payable when made pursuant to the employer-funded long term disability plan. N.C.G.S. § 97-42.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission adopts and affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Subject to the attorney's fees approved hereinafter and defendants' full credit, defendants shall pay to plaintiff total disability benefits at the rate of $264.88 per week from November 3, 1999 until September 8, 2000.
2. Subject to the limitations of N.C.G.S. § 97-25.1, defendants shall pay for all reasonably necessary medical expenses incurred or to be incurred by plaintiff as a result of her compensable injury when bills for same have been approved in accordance with Commission procedure, for so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief or lessen plaintiff's period of disability.
3. A reasonable attorney's fee of twenty-five percent (25%) of the compensation due plaintiff herein is hereby awarded to plaintiff's counsel and shall be paid to plaintiff's counsel by deducting 25% from the lump sum due plaintiff.
4. Defendants shall pay the costs due the Commission.
This the ___ day of December 2001.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/______________ RENE C. RIGGSBEE COMMISSIONER